UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MONICA M. EVANS,                          )
                                          )
            Plaintiff,                    )
                                          )
      vs.                                 )          Case No. 4:12CV01675 ERW
                                          )
HARDEE'S FOOD SYSTEMS, INC., et al.,      )
                                          )
            Defendants.                   )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment [ECF No. 54].

## I.     BACKGROUND

Plaintiff Monica M. Evans ("Plaintiff") filed this action, pro se, on September 13, 2012, alleging discrimination based on color, sex, age, retaliation, and disability, in connection with Defendant Hardee's Food Systems, Inc.'s ("Hardee's") termination of her employment on or about April 30, 2012 [ECF Nos. 1, 1-1]. With her Complaint, Plaintiff filed copies of a June 12, 2012, Charge of Discrimination, dually filed with the Missouri Commission of Human Rights ("MCHR"), and the Equal Employment Opportunity Commission ("EEOC"); a June 19, 2012, EEOC Dismissal and Notice of Rights; a July 6, 2012, Notice of Charge of Discrimination received by the MCHR; an August 13, 2012 Notice of Right to Sue pursuant to the Missouri Human Rights Act ("MHRA"); a July 2, 2012, request for a service letter pursuant to Missouri Revised Statute § 290.140; and a copy of a July 5, 2012, Service Letter addressed to Plaintiff [ECF No. 1-1]. The Service Letter stated Plaintiff was dismissed for insubordination [ECF No. 1-1 at 11].

Counsel was appointed by this Court, for the limited purpose of assisting Plaintiff with the Alternative Dispute Resolution ("ADR") process ordered by the Court [ECF Nos. 32, 33]. The ADR conference was conducted on April 15, 2013, but resolution was not achieved [ECF No. 42].

On April 16, 2013, Plaintiff filed a First Amended Complaint, against Hardee's, and three of its employees: District Manager Dawn Whited ("Whited"), General Manager Felicia Epps ("Epps"), and General manager Dianna Marmon ("Marmon") [ECF No. 41]. The First Amended Complaint asserts claims for: 1) failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the MHRA, Mo. Rev. Stat. §§ 213.010 et seq., (Counts I and II); 2) discharge based on disability in violation of the ADA and the MHRA (Counts III and IV); 3) harassment based on disability in violation of the ADA and the MHRA (Counts V and VI); 4) retaliation under the ADA and the MHRA (Counts VII and VIII); 5) violation of the Missouri Service Letter Statute, Mo. Rev. Stat. § 290.140.2 (Count IX); and 6) intentional infliction of emotional distress (Count X) [ECF No. 41]. Counts II, IV, VI, and X are brought against all defendants. Counts I, III, V, VII, VIII, and IX are asserted against Hardee's only. Defendants timely filed their Answers [ECF Nos. 44-47]. Pro bono counsel was appointed to represent Plaintiff in all proceedings on July 10 [ECF No. 53]. The matter is currently scheduled for a jury trial to commence on January 13, 2014.

Defendants filed their Motion for Summary Judgment on August 9, 2013 [ECF Nos. 54 through 55-1, 66, 68]. In their motion, Defendants contend they are entitled to judgment as a matter of law because, based on the pleadings and discovery herein, there remain no issues of material fact to be decided by the trier of fact. Plaintiff filed a Response, Defendants filed a Reply, and Plaintiff, with leave of Court, filed a Sur-Reply [ECF Nos. 59-64, 68-73].

## II.	LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(c) provides that a party asserting a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will not lie if a genuine dispute about a material fact is shown; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or draw inferences from the facts. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

To satisfy his initial responsibility, the movant must inform the court of the basis for her motion and must identify those portions of the record she believes demonstrate the absence of a genuine issue of material fact. *Id.* at 1042. Once the moving party has discharged the requisite evidentiary burden, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* (citations omitted). If the nonmovant fails to produce such evidence, summary judgment in favor of the moving party is proper. *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III. STATEMENT OF UNDISPUTED OR UNCONTROVERTED FACTS

As directed by Local Rule 7-4.01(E), Defendants filed a "Statement of Undisputed Facts" with their Motion, specifically cited to portions of the record in support of each numbered statement [ECF No. 54 at 2-9]. Once the party moving for summary judgment satisfies Fed. R.Civ. P. 56 and Local Rule 7-4.01(E), a party asserting that a fact is genuinely disputed must support that assertion by citing to particular parts of the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1); Local R. 7-4,01(E).

In her Response in opposition, Plaintiff included a "Statement of Disputed Material Facts," listing those factual statements to which she contends a genuine issue exists [ECF No. 60 at 3-5]. Plaintiff's "Statement of Disputed Material Facts" identifies, as disputed, only the following numbered statements from Defendants' "Statement of Undisputed Facts": 10, 14, 25, 37, 39, 40-53, 58-63, 65, 66; consequently, the Court shall consider whether the record supports the absence or presence of a genuine dispute as to these numbered statements. *See* Fed. R. Civ. P. 56(a), (c), (e); Local Rule 7-4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."). Defendants' remaining listing of facts are undisputed for purposes of this summary judgment motion [ECF No. 54 at 2-9, ¶¶ 1-9, 11-13, 15-24, 26-36, 38, 54-57, 61, 64, 67-72] . In their responses to Plaintiff's "Statement of Disputed Material Facts," Defendants acknowledge they are required to treat as true the statements contained in paragraphs 5 and 6 of Plaintiff's statement [ECF Nos. 60 at 3; 69 at 3]. Defendants do not controvert the statement, contained in paragraphs 12 or 13 of Plaintiff's statement, that Plaintiff told Epps about her PTSD [ECF Nos. 60 at 5, 69 at 5].

## A.    <u>Undisputed Material Facts</u>

Plaintiff is a Missouri resident.  Hardee's is a North Carolina corporation, with its principal place of business in St. Louis, Missouri.  At all times relevant to this matter, Epps was the General Manager of Hardee's Valley Park, Missouri, restaurant; Marmon was the General Manager of Hardee's Crestwood, Missouri, restaurant; and Whited was Hardee's District Manager over the Valley Park and Crestwood restaurants.

Plaintiff has a diagnosis of Post-Traumatic Stress Disorder ("PTSD").  Epps, who knew Plaintiff because they attended the same church, suggested that Plaintiff apply for a job at Hardee's.  Plaintiff was hired on or about January 28, 2012, to work as a Crew Person and Cashier in the Valley Park Restaurant.  Epps was her supervisor.  Epps was aware that Plaintiff had a diagnosis of PTSD when she was first hired.

Plaintiff claims that Epps bullied her.  When asked how Epps bullied her, Plaintiff testified that on seven or eight occasions, when Plaintiff was waiting on customers, Epps interjected herself into the transactions, often taking the customer's order herself, pushing Plaintiff aside, correcting Plaintiff's performance, and embarrassing her.

Epps noticed that Plaintiff had begun to have difficulties getting along with her coworkers.  Plaintiff was transferred to the Crestwood Restaurant on or about March 6, 2012.  At the Crestwood Restaurant, Plaintiff had the same job position, duties, and rate of pay that she had at the Valley Park Restaurant.

Plaintiff claims that Marmon bullied her just as Epps had.  As an example of how she was mistreated, Plaintiff testified that she was not allowed to wear dark nail polish, although another employee was allowed to do so.

On April 28, 2012, Plaintiff was scheduled to work until 2:30 p.m.  At about 2:00 p.m., Marmon asked Plaintiff to finish her "side jobs."  The "side jobs" for a cashier and crew person include spot sweeping the lobby floor and mats, as well as mopping any dirty areas.  Plaintiff told Marmon that she "had to go."  When Marmon reminded Plaintiff that she was not scheduled to leave until 2:30 p.m., Plaintiff began arguing with Marmon.  Plaintiff told Marmon that she was leaving, and then she began to clock out.  Marmon told Plaintiff, "If you leave, don't bother about coming back."

Marmon called Whited, and explained that Plaintiff was refusing to complete the jobs that she was supposed to complete at the end of the shift, including cleaning the floor.  Marmon also told Whited that Evans had begun to argue with her and raise her voice.

 While Marmon was explaining the situation to Whited, Plaintiff asked to speak with Whited.  Plaintiff spoke with Whited.  Whited spoke with Plaintiff and asked her if Marmon had asked her to clean the floor.   Plaintiff told Whited that Marmon had asked her to clean the floor, but that she did not have time to do it.  Whited told Plaintiff, "If you are not off until 2:30, then you have time to do what your manager is telling you to do."  This conversation occurred around 2:00 p.m.  Plaintiff kept telling Whited that she did not have time to clean the floor.  Whited told Plaintiff, "If you are not going to do what your manager is telling you to do, you can go home. We don't need people to work who refuse to follow the general manager's instructions." Plaintiff hung up the phone.

After hanging up the phone, Evans walked into the manager's office and hit Marmon on the head.  This incident is captured on Hardee's video camera.

During Plaintiff's employment, Hardee's "Fair Treatment Policy" was posted in the Crestwood Restaurant and the Valley Park Restaurant. These posters included the phone number of the Regional Human Resources Manager.

Plaintiff requested a service letter on July 2, 2012. Since her termination, Plaintiff has been offered an employment position inspecting apartments.

The Charge of Discrimination that Plaintiff filed with the MCHR on June 18, 2011 (the "June Charge") is attached to Plaintiff's original Complaint. Evans checked the box marked "disability" discrimination on the June Charge. The June Charge fails to describe any failure by Defendants to accommodate Plaintiff's purported disability. The Charge of Discrimination that Plaintiff filed with the MCHR on July 6, 2011 (the "July Charge") is attached to Plaintiff's original Complaint. Plaintiff checked the box marked "disability" discrimination on the July Charge. The July Charge fails to describe any failure by Defendants to accommodate Plaintiff's purported disability.

## B.     Uncontroverted Material Facts Deemed Admitted

Whited decided to terminate Plaintiff's employment because she was insubordinate when she refused to follow her manager's directions to clean the floor and because she assaulted Marmon [ECF Nos. 54 at , ¶39; 6; 54-3 at 2, ¶12; 60 at 3, ¶¶ 3 and 4; 60-1 at 19-20; 63 at 11]. The only person who knew Plaintiff had a disability when she was working at Hardee's was Epps; Marmon and Whited did not know that Plaintiff had any kind of disability [ECF Nos. 54 at 6, ¶¶ 43, 46; 54-2 at 1, ¶ 5; 54-3 at 2, ¶¶ 134-16]. Plaintiff never asked Marmon or Whited for any kind of accommodation [ECF Nos. 54 at 6, ¶¶ 45, 48; 54-2 at 1, ¶4; 54-3 at 2, ¶ 15; 60-1 at 9].

Hardee's has a "Fair Treatment Policy" [ECF Nos. 54 at 6, ¶49; 54-5 at 1, ¶¶ 2-4; 60 at 4, ¶7; 60-1 at 9]. The Fair Treatment Policy provides that every employee is to be treated fairly with regard to working conditions, benefits, promotions, and resolution of complaints without regard to race, color, creed, sex, age, disabilities, or national origin [ECF Nos. 54 at 7, ¶ 50; 60 at 4, ¶ 7; 66-1 at1- 2, ¶¶ 5-7; 60-1 at 9]. The policy prohibits retaliation, contains a complaint procedure, and provides that, if an employee is unable to resolve a problem by contacting the General Manager, the employee is to contact the District Manager. If that fails, the employee is to contact the Regional Human Resources Manager or the Regional Vice President [ECF Nos. 54 at 7, ¶¶ 51-53; 66-1 at 2, ¶¶ 79; 54-5 at 1,¶ 4 and at 3; 60 at 4, ¶¶ 7, 10; 60-1 at 9]. At the time of her hire, Plaintiff participated in "Awareness Training," Hardee's on-line orientation [ECF Nos. 54 at 7, ¶ 58; 54 at 8, ¶ 60; 54-5 at 1, ¶¶ 2-4; 54-5 at 3; 60-1 at 9]. "Awareness Training" includes a description of the policy prohibiting harassment, and employees are advised to contact the manager, or the Human Resources Department if they experience harassment [ECF Nos. 54 at 7, ¶ 59; 54-5 at 1, ¶¶ 2-4; 60 at 4, ¶ 10; 60-1 at 9].

Hardee's provided a Service Letter to Plaintiff on July 5, 2012[1] [ECF Nos. 1-1 at 11; 54 at 8, ¶ 62; 54-5 at 1, ¶ 6; 54-5 at 7].

## IV. DISCUSSION

In their motion, Defendants contend Plaintiff's employment was terminated because she was insubordinate [ECF No. 54 at 2]. Defendants claim, on April 28, 2012, the last day Plaintiff worked in the Crestwood restaurant, Plaintiff told Marmon, her general manager, that she would

---

[1]Interestingly, Plaintiff continues to assert that she never received a Service Letter from Hardee's; however, she fails to explain her ability to file a copy of a Service Letter, dated July 5, 2012, as an attachment [ECF No. 1-1 at 11] to the original Complaint she initiated against Defendants on September 13, 2012, if she never received such a document.

not complete the cleaning chores assigned to her that day. Defendants further assert that, after being told to go home, Plaintiff assaulted Marmon, hitting her with force strong enough to cause her hairpiece to fall to the floor. (Defendants state this incident is captured on Hardee's videotape, which has been provided to Plaintiff, and they move the Court to include the videotape as part of the summary judgment record.) Defendants contend District Manager Whited decided to terminate Plaintiff's employment because she had been insubordinate and because she physically assaulted Marmon.

Defendants argue they are entitled to summary judgment on any claims arising out of events occurring at the Crestwood restaurant because the termination decision-makers, White and Marmon, had no knowledge of Plaintiff's PTSD diagnosis [ECF No. 70]. They contend they are entitled to summary judgment on the remaining ADA claims arising out of events occurring at the Valley Park restaurant, because there is no evidence that Epps engaged in any disability-based discrimination. They claim Plaintiff received a letter satisfying the requirements of the Service Letter Statute. Finally, they argue they are entitled to summary judgment on Plaintiff's intentional-infliction-of-emotional-distress claims, because Plaintiff has adduced no evidence of outrageous conduct and no admissible medical evidence showing she suffered emotional distress from Defendants' actions.

In her response to Defendants' summary judgment motion, Plaintiff claims there are several material facts still in dispute that require resolution by a fact-finder [ECF No. 60]. She contends "there are at least five material facts still in dispute at this stage in the litigation" [ECF No. 73 at 3]. In her Sur-Reply, Plaintiff asserts the following five statements are triable issues of material fact appropriate for consideration by a jury: 1) Hardee's knew that Plaintiff suffered from a disability; 2) Plaintiff was not provided with new-hire training or orientation on any of

Hardee's policies or procedures; 3) Plaintiff was not fired because of an "assault"; 4) the reason Plaintiff was harassed and discriminated against at Hardee's was because of her PTSD; and 5) Plaintiff's requests for help from her supervisors constituted a request for an accommodation [ECF No. 73 at 5-6].

### A.    Failure to Accommodate under the ADA and the MHRA

Defendants contend they are entitled to summary judgment on Plaintiff's claims that they failed to accommodate her disability because Plaintiff failed to exhaust her administrative remedies as to these two claims.  The Court agrees.

Exhaustion of administrative remedies is a condition precedent to the filing of a claim of failure to accommodate under the ADA.  *McNeil v. Metro*, 748 F.Supp.2d 1047, 1056 (E.D. Mo. Oct. 25, 2010).  This exhaustion requirement is satisfied if the information supplied in a charge of discrimination is sufficient to provide the employer notice of the charge's subject matter, and identify generally the basis for the claim.  *Id.*

In Count I of her Complaint (directed solely to Hardee's), Plaintiff alleges Failure to Accommodate under the ADA, and in Count II (against all defendants), she alleges Failure to Accommodate under the MHRA [ECF No. 41 at 7-9].  In a Charge of Discrimination filed with the MCHR on June 18, 2012, Plaintiff checked the boxes labeled "color," "sex," "retaliation," "age," and "disability" [ECF No. 1-1 at 1].  In an EEOC Notice of Charge of Disrimination, dated n July 16, 2012, the boxes labeled "age" and "disability"were checked as "Circumstances of Discrimination" [ECF No. 1-1 at 5].

In the narrative part of the Charge filed with the MCHR, Plaintiff wrote that she was consistently bullied, disrespected and spoken to in a degrading manner in front of her male co-workers and customers.  She alleged that Epps was aware of her disability, and contributed to it

by bullying, harassing and intimidating her.  Plaintiff stated that she and Epp were friends before

Epps hired her.  She alleged that, after she told Epps she was wrong for getting angry at Plaintiff

when Epps handed a wrong order to a customer, Epps informed her on March 1, 2013, that she

was transferring Plaintiff to a different store because Epps "didn't think this was working out."

Plaintiff further alleged her new general manager, "Ms. Dianna (last name unknown)" treated her

in a more degrading manner than Epps had, and she stated she unsuccessfully asked Ms. Dianna

several times for an opportunity to discuss her treatment.  Plaintiff stated she left a message on

the district manager's voicemail, requesting to discuss Ms. Dianna's treatment of Plaintiff.

Plaintiff alleged the district manager ("Dawn") told her on April 2, 2012, that she had to proceed

through her chain of command.  Plaintiff said she was scheduled to conclude her shift at 2:30

p.m. on April 30, 2012, and she asked Ms.Dianna if she could "count [her] drawer down" around

2:00 p.m.. Plaintiff stated, when Ms. Dianna told Plaintiff she could not leave until she mopped

the dining area floor, she informed Ms. Dianna that she could not mop the floor by herself and

count her drawer by 2:30 p.m.  She claimed Ms. Dianna then told her to "clock out and don't

worry about coming back.  Plaintiff alleged Epps and Ms. Dianna have darker skin tones than

Plaintiffs, and she believed they harassed her because her color is a caramel tone.  She concluded

by saying: "I believe that I was discriminated against due to my color, sex, age, disability and out

of retaliation for complaining about how I was being treated" [ECF No. 1-1 at 2].

Although Plaintiff's allegations must be liberally construed, "[a]llowing a complaint to

encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the

EEOC's investigatory and concillatory role, as well as deprive the charged party of notice if the

charge . . .." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994)

(internal quotations and citation omitted).  Nothing in the filed charges suggests that Plaintiff was

alleging Defendants failed to accommodate her; they contain no allegation that Plaintiff had requested, or needed, any accommodation to perform her job duties. Plaintiff failed to exhaust her administrative remedies with respect to her failure-to-accommodate claims. Consequently, the Court will dismiss Counts I and II of Plaintiff's Complaint because these claims have not been preserved. *See id.*; *Alhalabi v. Mo. Dep't of Natural Res.*, 300 S.W.3d 518, 525 (Mo. Ct. App. 2009) (to exhaust administrative remedies under the MHRA, claimant must give notice of all claims of discrimination in the administrative complaint; remedies deemed exhausted as to all incidents of discrimination that are like or reasonably related to charge's allegations).

Moreover, even if Plaintiff had adequately preserved her failure-to-accommodate claims, the Court finds that the claims would nevertheless fail, as the record establishes Plaintiff cannot show she made any request for an accommodation for PTSD. Plaintiffs cannot expect their employers to "read" their minds and divine they secretly desired particular accommodations, and then sue the employer for not providing them. *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1217-18 (8th Cir. 1999).

### B.    Discharge based on Disability in Violation of the ADA and the MHRA

In Counts III (against Hardee's only) and IV (against all defendants) of her Complaint, Plaintiff alleges Defendants violated the ADA (Count III) and the MHRA (Count IV), by wrongfully discharging her on the basis of her disability. Defendants argue they are entitled to summary judgment on Plaintiff's claims that her employment was terminated based on her PTSD, because Plaintiff cannot show she was qualified for the job as required to establish a prima facie case under the ADA, and has not proved her disability was a contributing factor in her termination, as required under the MHRA. They further contend Plaintiff cannot show her

disability played any part in her discharge, Hardee's has established a legitimate, non-discriminatory reason for its actions, and Plaintiffs has no evidence of pretext.

Plaintiff does not allege any direct evidence of discrimination because of disability. Consequently, to defeat Defendants' motion for summary judgment on her claims of discharge based on disability in violation of the ADA, Plaintiff must make a prima facie showing under the *McDonnell Douglas* burden-shifting framework. *See Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 777 (8th Cir. 2009). Plaintiff must demonstrate: 1) she was disabled within the meaning of the ADA; 2) she was qualified to perform the essential functions of her job; and 3) she suffered an adverse employment action because of her disability. *Id.* If Plaintiff makes the required showing, the burden of production shifts to Hardee's to articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* at 777-78. If Hardee's meets this burden, the burden of proof lies with Plaintiff to discredit Defendants' stated reason for terminating here, and show circumstances raising a reasonable inference that the real reason for her discharge was her PTSD. *Id.* at 778.

Even assuming that Plaintiff has demonstrated the first two elements of her prima facie case, the Court concludes that Plaintiffs has failed to create "a triable question of fact at the prima facie stage regarding a causal relationship between discriminatory intent and the adverse employment actions." *Id.* The uncontroverted material facts establish that Whited decided to terminate Plaintiff's employment because Plaintiff was insubordinate when she refused to follow her manager's directions to clean the floor, and because she assaulted Marmon. Furthermore, the only person who knew Plaintiff had a disability when she was working at Hardee's was Epps, who was not involved in the circumstances surrounding Plaintiff's discharge, or in the decision to terminate Plaintiff on April 30, 2012. Marmon and Whited, the termination decision-makers,

did not know that Plaintiff had any kind of disability; thus, Plaintiff cannot show that she suffered an adverse employment action because of her PTSD.

Furthermore, even if Plaintiff had shown a triable question of fact regarding the threshold issue of causation, she failed to carry her ultimate burden of proving discrimination. *See id*. at 777-78 (if employee demonstrates elements of prima facie case, burden of production shifts to employer to supply legitimate, non-discriminatory reason for adverse employment action; employee then has burden of proving pretext, which requires more substantial evidence that is viewed in light of employer's justification). Here, Hardee's proffered reason for terminating Plaintiff is insubordination. The undisputed material facts establish that Plaintiff was scheduled to work until 2:30 p.m. on April 28, 2012, and that, about 2:00 p.m., Marmon asked Plaintiff to finish her "side jobs," which included sweeping the lobby floor and mats, and mopping any dirty areas. Plaintiff told Marmon that she "had to go." When Marmon reminded Plaintiff that she was not scheduled to leave until 2:30 p.m., Plaintiff began arguing with Marmon. Plaintiff told Marmon she was leaving, and began to clock out. Marmon told Plaintiff, "If you leave, don't bother about coming back." Marmon then called Whited, and informed her of the situation. According to her request, Plaintiff also spoke with Whited around 2:00 p.m. During this conversation, Plaintiff confirmed Marmon had asked her to clean the floor, and Plaintiff told Whited she did not have time to do so. Whited told Plaintiff, "If you are not off until 2:30, then you have time to do what your manager is telling you to do." When Plaintiff continued to insist she did not have time to clean the floor, Whited warned Plaintiff, "If you are not going to do what your manager is telling you to do, you can go home. We don't need people to work who refuse to follow the general manager's instructions." Plaintiff then hung up the phone, walked into Marmon's office, and hit Marmon on the head. The uncontroverted material facts establish

Whited decided to terminate Plaintiff's employment because she was insubordinate when Plaintiff refused to follow Marmon's directions to clean the floor and because Plaintiff assaulted Marmon.

Plaintiff has failed to show circumstances raising a reasonable inference that the real reason for her discharge was her disability, particularly in light of the uncontroverted fact that neither Whited nor Marmon were aware of any disability. Plaintiff's conclusory statements, "Defendants Epps and Marmon intentionally baited Plaintiff into reacting to their mistreatment in the hopes of causing her to do something for which they could terminate her," and "Defendant Marmon placed unreasonable expectations on Plaintiff and terminated her for alleged insubordination when Plaintiff allegedly failed to meet those expectations," do not constitute the substantial evidence required to prove pretext, and lack factual support in the record.

To establish a prima facie case of discrimination under the MHRA and thus survive summary judgment, Plaintiff need not show that discrimination was a substantial or determining factor in the adverse employment decision; rather, she must only demonstrate a genuine issue of material fact as to whether her disability was a "contributing factor" in Hardee's termination decision. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 820 (Mo. banc 2007). Plaintiff has failed to create a genuine issue of material fact as to whether her PTSD, or any perceived disability, was a contributing factor in Hardee's decision to terminate her. The Court will grant Hardee's Motion for Summary Judgment as to Counts III and IV.

C. **Harassment Based on Disability in Violation of the ADA and the MHRA**

Plaintiff also alleges harassment based on disability in her Complaint, bringing one claim under the ADA (Count V), and one claim under the MHRA (Count VI). Plaintiff's ADA harassment claim is directed solely to defendant Hardee's; her MHRA harassment claim is

brought against all defendants.  In Count V of her Complaint, Plaintiff alleges she was subjected

to unwelcome harassment, based on her disability, by Epps and Marmon.  She claims the

harassment was so severe and pervasive as to alter the conditions of her employment, and to

create an intimidating, hostile or offensive working environment.  Plaintiff further alleges

Hardee's knew of the harassment, did not properly investigate her complaints, and failed to

adequately remedy the situation.  In Count VI, Plaintiff additionally alleges that Whited had

knowledge of the harassment, but failed to properly investigate and adequately remedy the

situation.

To establish a prima facie case for a hostile work environment based on supervisor

harassment, Plaintiff must show that: 1) she belongs to a protected group; 2) she was subject to

unwelcome harassment; 3) a causal nexus exists between the harassment and Plaintiff's protected

group status; and 4) the harassment affected a term, condition, or privilege of her employment.

*Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1143 (8th Cir. 2007).  A hostile work

environment is created when harassment is "sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment."  *Id.*

Analysis of such claims considers the totality of the circumstances, and courts look at "whether

the discriminatory conduct was frequent and severe; whether it was physically threatening or

humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered

with the employee's work performance."  *Id.* (quoting *Gordon v. Shafer Contracting Co., Inc.*,

469 F.3d 1191, 1195 (8th Cir. 2006).  The prima facie case for a hostile work environment under

the MHRA is similar to the federal standard.  *Griffey v. Daviess/DeKalb Cnty. Reg'l Jail*, 2012

WL 10881, at *5 (W.D. Mo. Jan. 3, 2012) (listing elements; requiring protected class

membership to be "contributing" factor in harassment).  As an initial matter, the Court notes that

only Epps was even aware of Plaintiff's PTSD diagnosis, and she hired Plaintiff with this knowledge.  When asked how Epps bullied her, Plaintiff testified that on approximately eight occasions, when Plaintiff was waiting on customers, Epps interjected herself into the transactions, often taking the customer's order herself, pushing Plaintiff aside, correcting Plaintiff's performance, and embarrassing her.  Plaintiff claims Marmon similarly bullied her, and Plaintiff testified that she was not allowed to wear dark nail polish, although another employee was allowed to do so.  Viewing the facts most favorably to Plaintiff, the Court finds Plaintiff has failed to establish a prima facie case against Defendants.  The record reveals Plaintiff complains of harassment that was neither sufficiently severe nor pervasive.  A reasonable person could not find that Plaintiff's working environment was sufficiently hostile to affect Plaintiff's working conditions.  *See E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 687 (8th Cir. 2012) ("Title VII . . . is not a general civility code for the American workplace." (quoting *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 953 (8th Cir. 2011)).  Conduct that is merely rude or unpleasant is insufficient to support a hostile work environment claim.  *Id.*  Moreover, Plaintiff has failed to establish a causal nexus between the alleged harassment and her protected status, or to show that her protected class membership was a contributing factor in any harassment.  The Court will grant Defendant's Motion for Summary Judgment as to Counts V and VI.

### D. <u>Retaliation under the ADA and the MHRA</u>

Plaintiff alleges two counts of retaliatory discharge in her Complaint, one alleging violation of the ADA (Count VII) (solely against Hardee's), and one alleging violation of the MHRA (Count VIII) (solely against Hardee's).

In her Complaint, Plaintiff alleges she engaged in activity protected by the ADA by complaining to Epps and Marmon, and by attempting to complain to Whited about Defendants' discrimination, harassment, and failure to accommodate her. She further alleges that Hardee's terminated her in retaliation for her protected conduct.

A prima facie case of retaliation under the ADA requires an affirmative showing by Plaintiff that: 1) she engaged in protected conduct; 2) a reasonable employee would have found the challenged retaliatory action by Hardee's to be materially adverse; and 3) the material adverse action was causally linked to Plaintiff's protected activity. *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030-31 (8th Cir. 2013). Upon such a showing, a presumption of retaliation arises, and the burden of production shifts to Hardee's to articulate a legitimate reason for the adverse employment decision. *Id.* Again, the ultimate burden of persuasion remains with Plaintiff to show the adverse action was motivated by intentional retaliation. Plaintiff has failed to show that she engaged in protected conduct; the record does not establish that she reported any incidents of harassment during her employment with Hardees. Furthermore, even assuming Plaintiff presented sufficient evidence of the first and second elements of a retaliation case under the ADA, as discussed above, Plaintiff has failed to meet her burden of persuasion as to the element of causation.

Pursuant to the MHRA, retaliating or discriminating against an individual who has filed a complaint opposing a practice prohibited by the MHRA constitutes an unlawful discriminatory practice. *Williams v. Trans State Airlines, Inc.*, 281 S.W.3d 854, 866 (Mo. Ct. App. 2009). To make a submissible claim for retaliatory discharge under Missouri's act, Plaintiff must establish: 1) Hardee's terminated her employment; 2) her complaint of harassment was a contributing factor in the termination; and 3) she sustained damage as a direct result of the conduct. *Id.*

Applying the "contributing factor" analysis to Plaintiff's disability discrimination claim, her claim fails to survive summary judgment, as Plaintiff has failed to create a genuine issue of material fact as to whether her PTSD was a "contributing factor" in the termination decision. Rather, the record shows Plaintiff was terminated as a result of insubordination when she refused to follow her general manager's instructions to complete her job duties before clocking out. The Court will grant Defendants' Motion for Summary Judgment as to Counts VII and VIII.

### E.     Violation of the Missouri Service Letter Statute, Mo. Rev. Stat. § 290.140

In Count IX of her Complaint, Plaintiff alleges that she was fired by Hardee's on April 30, 2012, after being employed by Hardee's for more than ninety (90) days [ECF No. 41 at 16-17]. Plaintiff further alleges that Hardee's does business in Missouri, and employs more than seven employees. She states she requested in writing a letter of dismissal for Hardee's, by certified mail, with specific reference to the Service Letter Statute, on or about July 2, 2012. In her Affidavit supporting her "Opposition to Defendant's Motion for Summary Judgment," Plaintiff states: "I have not, to date, received the Service Letter I requested from Hardee's after my termination pursuant to R.S.Mo. section 290.140" [ECF No. 60-2 at 2, ¶ 10]. In her "Memorandum in Support of Motion in Opposition to Defendants' Motion for Summary Judgment," Plaintiff states Hardee's failed to provided a letter that complied with the statute, and inconsistently alleges Hardee's issued a service letter on or about July 5, 2012, in which Hardee's described the reason for Plaintiff's separation as "insubordination" [ECF No. 63 at 12]. Plaintiff now contends the July 5, 2012 service letter violates § 290.140, because the letter does not state truly for what cause Plaintiff was fired, in that insubordination was "a pretextual reason given to cover Defendant Hardee's unlawful discrimination" [ECF No. 41 at 16].

Defendants contend they are entitled to summary judgment on Plaintiff's claim for violation of Missouri Revised Statute § 290.140.2, because Plaintiff received a letter satisfying the Missouri Service Letter Statute's requirements [ECF No. 70]. In her Response, Plaintiff argues she has not received a proper service letter, because Hardee's failed to provide a letter explaining her job duties [ECF No. 63]. Plaintiff claims this alleged failure violates the statute, and entitles her to actual and compensatory damages, and, potentially, punitive damages if she can demonstrate Hardee's acted with reckless indifference to her rights as a former employee.

The Missouri Service Letter Statute requires corporations employing seven or more employees, to provide to certain employees a letter of dismissal, upon such an employee's written request with specific reference to the statute, and timely delivery by certified mail to designated corporate employees or agents. Mo. Rev. Statute § 290.140. Section 290.140 provides that this service letter, duly signed by such superintendent or manager, shall be sent within forty-five days after receipt of the employee's request, and shall "set[ ] forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stat[e] for what cause, if any, such employee was discharged or voluntarily quit such service." Mo. Rev. Stat. § 290.140.1. Corporations that violate the statutory requirements are liable for compensatory damages; however, if the evidence establishes that the employer failed to issue the required letter, the corporation may be liable for nominal and punitive damages. Mo. Rev. Stat. § 290.140.2. Plaintiff requested a letter of dismissal from Hardee's on July 2, 2012 [ECF No. 41 at 16]. Although Plaintiff, at various times, has denied receipt of a letter, Plaintiff attached a copy of a Service Letter, dated July 5, 2012, to the original Complaint she filed in this matter [ECF No. 1-1 at 11]. This letter, signed by Hardees' Human Resources Manager, Kim Lucker, indicates Plaintiff was employed (rehired) by Hardees's for the period between January

28, 2012 and May 1, 2012 [ECF No. 1-1 at 11]. The letter lists Plaintiff's last position as a crew member, and her last hourly wage of $7.50 per hour. The letter states insubordination as the reason for Plaintiff's separation from employment [ECF Nos. 1-1 at 11, 41 at 16]. Thus, the record establishes Hardee's issued the required letter.

In order to recover actual damages for her service letter claim, Plaintiff must show: 1) she was refused or hindered in obtaining employment; 2) the refusal or hindrance was due to the absence or inadequacy of a service letter; 3) the position Plaintiff was refused or hindered in obtaining was actually open; and 4) the rate of pay for the position she did not obtain. *Gibson v. Hummel*, 688 S.W.2d 4, 9 (Mo. Ct. App. E.D. 1985). Plaintiff has not met the elements of proof required to recover actual damages. Plaintiff has not shown she was refused or hindered in obtaining employment due to the absence or inadequacy of a service letter. In fact, Plaintiff testified during her deposition that she had made only one attempt to get a job, and that she declined an offer of employment. During her deposition Plaintiff was asked if she had made any attempts to get a job since her termination [ECF No. 54-4 at 18]. Plaintiff responded: "I was offered a position to inspect apartments, but I had to turn it down because I was afraid that those people would probably treat me the way that my managers did" [ECF No. 54-4 at 18]. She further testified that she had not looked for any other work [ECF No. 54-4 at 19]. Nor has Plaintiff shown any right to an award of punitive damages. *See J & J Home Builders, Inc. v. Hasty*, 989 S.W.2d 614, 617 (Mo. Ct. App. 1999) (punitive damages may be awarded for conduct on part of employer that is outrageous due to employer's evil motive or reckless indifference to other's rights). The Court will grant Defendants' Motion for Summary Judgment as to Count IX, Plaintiff's claim for violation of the Missouri Service Letter Statute.

### F.     Intentional Infliction of Emotional Distress

Plaintiff asserts a claim against all defendants for intentional infliction of emotional distress ("IIED") in Count X of her Amended Complaint [ECF No. 41 at 16-17]. She contends she is a disabled employee with a condition that makes her particularly vulnerable to Defendants' bullying and harassment, and she alleges Defendants' behavior was outrageous and extreme. Plaintiff claims Defendants acted intentionally or recklessly. She alleges Defendants' conduct caused her extreme emotional distress that resulted in bodily harm. Plaintiff further claims Defendants intended their extreme or outrageous conduct solely to cause her extreme emotion distress. Plaintiff's claim is based on the alleged intentional misconduct of Defendants that Plaintiff also alleges in support of her ADA and MHRA claims.

To sustain a claim for IIED under Missouri law, Plaintiff must establish three elements: 1) Defendants' conduct was extreme and outrageous; 2) defendants acted intentionally or recklessly, and 3) by reason of said conduct, Plaintiff was caused to suffer severe emotional distress that is medically diagnosable and of sufficient severity so as to be medically significant. *See Gibson v. Hummel*, 688 S.W.2d 4, 7 (Mo. Ct. App. 1985); *Bass v. Nooney Co.*, 646 S.W.2d 765, 772-73 (Mo. banc 1983). For liability to attach, Plaintiff must show Defendants' "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson*, 688 S.W.2d at 7(quoting *Restatement (Second) of Torts* § 46 comment d). Furthermore, expert medical testimony is required to establish a claim for emotional distress when physical injuries are not sustained "regardless of whether emotional distress constitutes a substantive element of the cause of action or an element of damages for any other type of action. *Glover v. McDonnell Douglas Corp.*, 981 F.2d 388, 395 (8th Cir. 1992).

In their Motion, Defendants contend they are entitled to summary judgment on Plaintiff's IIED claim, because the conduct complained of by Plaintiff, taken in the light most favorable to her, is, at most, rude and insensitive [ECF No. 55 at 15]. They further claim Plaintiff has no medical testimony establishing she suffered extreme emotional distress due to Defendants conduct, and no evidence she suffered severe emotional distress that resulted in bodily harm [ECF Nos. 55 at 15, 70 at 10]. In her Response, Plaintiff contends "[t]he burden is on Hardee's, as the moving party, to demonstrate something beyond its own bare assertion" that she has no evidence of emotion distress, before Hardee's can claim only a legal question remains as to her IIED claim [ECF No. 63 at 12]. She further argues pleading emotional harm is sufficient, because the Eighth Circuit does not require bodily harm as an element of an IIED claim. Plaintiff alleges Hardee's acted at least recklessly in aggravating and failing to accommodate her PTSD, and claims she has provided substantial evidence that Hardee's conduct was extreme, and caused her emotional distress.

The Court finds that Defendants' alleged actions fail to even approach conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Gibson*, 688 S.W.2d at 7. The Court agrees with Defendants that the alleged conduct, accepted as true and viewed generously in Plaintiff's favor, could, at best, be characterized as rude and insensitive. Additionally, the Court finds Plaintiff has failed to present expert medical testimony to support her claim for emotional distress. Because Plaintiffs' allegations do not raise a genuine issue of material fact as to whether Defendants' actions were extreme or outrageous as required under Missouri law to sustain an IIED claim, and Plaintiff has not alleged physical injury or presented expert medical testimony of medically diagnosable and medically significant emotional

distress, the Court will grant Defendants' Motion for Summary Judgment as to Count X, Plaintiff's claim for IIED.

## V.    CONCLUSION

The Court will dismiss Counts I and II for failure to exhaust administrative remedies, and will grant Defendants' Motion for Summary Judgment as to Counts III, IV, V, VI, VII, VIII, IX, and X of Plaintiff's Complaint for the reasons discussed above.

Accordingly,

**IT IS HEREBY ORDERED** that Counts I and II of Plaintiff's First Amended Complaint are **DISMISSED**, as these claims have not been preserved due to failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 54] is granted as to all remaining counts. Plaintiff's First Amended Complaint [ECF No. 41] is **DISMISSED with prejudice**, in its entirety.

Dated this __19th__ day of December, 2013.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE